**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CMF ASSOCIATES, LLC,<br><br>    *Plaintiff*,<br><br>  v.<br><br>SCOUT MEDIA, INC., *et al*.,<br><br>    *Defendants*. | CIVIL ACTION<br>NO. 15-01250 |

<u>**MEMORANDUM**</u>

**PAPPERT, J.**                                                                **May 6, 2015**

   Defendant North American Membership Group, Inc. ("North American") moves, pursuant to Rule 12(b)(6), to dismiss the claim against it. (ECF No. 6.) The Court grants the motion.

**I.**

   Plaintiff CMF Associates, LLC ("CMF") originally brought this action against Defendants Scout Media, Inc. ("Scout Media") and North American (collectively, "Defendants") in the Philadelphia Court of Common Pleas alleging one count of breach of contract against both Defendants. (Compl. ¶¶ 1-16.) The complaint alleges that in May 2014, CMF and the Defendants entered into a Consulting Agreement, whereby CMF would provide "professional consulting services" for a weekly fee and out-of-pocket expenses. (*Id*. ¶ 6, Ex. A.) Defendants failed to pay CMF amounts due under the Consulting Agreement totaling $159,958.68 from June 2014 through October 2014. (*Id*. ¶ 13.) On February 10, 2015, CMF filed suit seeking to recover the overdue payments. (*Id*. ¶¶ 1-16.) CMF served Defendants with the complaint by mail on February 12, 2015. (Not. of Removal ¶ 16, Ex. C.) On March 12, 2015, Defendants

removed the case to this Court pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446.  (Not. of Removal 1.)

North American filed its motion on March 19, 2015, contending that it should be dismissed from the case because it was not a party to the contract with CMF.  (ECF No. 6.) Specifically, North American pointed to the Consulting Agreement, attached to the complaint as Exhibit A, which provides that the agreement "is made and entered into . . . by and between CMF Associates, LLC . . . and Scout Media, Inc."  (Mem. in Supp. of Mot. Dismiss 2.)  North American also noted that the Consulting Agreement is signed only by representatives of CMF and Scout Media, and that it expressly states that "[t]here are no third-party beneficiaries of this Agreement . . ." (*Id.*).

CMF responded to North American's motion on April 21, 2015,[1] arguing that North American should not be dismissed because Scout Media is a subsidiary of North American[2] and parent corporations can be held liable for the actions of their subsidiaries should the Court choose to pierce the corporate veil.  (Pl.'s Opp'n to Mot. Dismiss 2-3, ECF No. 10.)[3]  In reply, North American stated that piercing the corporate veil is inappropriate in this case because nowhere in the complaint does CMF allege that North American possessed sufficient control over Scout Media's operations.  (North Am. Reply 2, ECF No. 11.)

---

[1]    CMF's filing was almost three weeks late.  Given CMF's late response, the Court could grant North American's motion as unopposed.  Rule 7.1(c) of the Local Rules of Civil Procedure provides that, in the absence of a timely response, the Court may grant motions to dismiss as uncontested.  *See also Kabacinski v. Bostrom Seating, Inc.*, 98 F. App'x 78, 82 (3d Cir. 2004) (recognizing that Local Rule 7.1(c) gave the district court power to grant the motion to dismiss as unopposed); *United States v. Eleven Vehicles, Their Equipment & Accessories,* 200 F.3d 203, 214 (3d Cir. 2000) ("Local court rules play a significant role in the district courts' efforts to manage themselves and their dockets. . . . it is not an abuse of discretion for a district court to impose a harsh result, such as dismissing a motion or an appeal, when a litigant fails to strictly comply with the terms of a local rule.") (citations omitted).  The Court will, however, proceed to consider the merits of CMF's opposition.

[2]    *See* (ECF Nos. 2-3) (Defendants' disclosure statement forms filed pursuant to Rule 7.1 of the Federal Rules of Civil Procedure disclosing Scout Media as a subsidiary of North American).

[3]    As CMF's opposition to North American's motion to dismiss lacks pagination, all citations to CMF's response papers will refer to ECF page numbers.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *i.e.*, sufficient facts to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009) (quotation omitted).

The court must construe the complaint in the light most favorable to the plaintiff. *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010) (quoting *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)). However, while all allegations contained in the complaint must be accepted as true, the court need not give credence to mere "legal conclusions" couched as facts. *Iqbal,* 556 U.S. at 678. To decide a motion to dismiss, courts consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.

To proceed on a breach of contract claim, the plaintiff must establish "the existence of a contract, including its essential terms," between the parties. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). "[A] defendant is liable for breach of contract only if it is a party to that

contract." *NBL Flooring, Inc. v. Trumbull Ins. Co.*, No. 10-cv-4398, 2014 WL 317880, at *2 (E.D. Pa. Jan. 28, 2014) (citations omitted); *see also Viso v. Werner*, 369 A.2d 1185, 1187 (Pa. 1977) ("[I]t is inconceivable, therefore, how there can be any recovery on a contract from one who was not a party thereto") (quoting *Geyer v. Huntingdon Cnty. Agric. Ass'n*, 66 A.2d 249, 250 (Pa. 1949)).

North American is not a party to the Consulting Agreement.  CMF alleges that Scout Media is a subsidiary of North American, that CMF entered into a Consulting Agreement with "Defendants," and that the "Defendants" failed to remit payments to CMF starting in June 2014.[4] (Compl. ¶¶ 2-4, 6, 13.)  The Consulting Agreement attached to the complaint, however, makes no mention of North American.  (Compl., Ex. A.)  It instead provides that it is "by and between CMF Associates, LLC . . . and Scout Media, Inc."  (Compl., Ex. A at 2.)  The contract is only signed by representatives for CMF and Scout Media, and expressly disavows the existence of any third party beneficiaries.  (Compl., Ex. A at 4-5.)  "Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."  *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) (citation omitted).  CMF and Scout Media are the only parties to the Consulting Agreement.

CMF's argument that North American should be held liable under the contract as Scout Media's parent corporation is unsupported and unsupportable.  It is "a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quotations omitted).  Courts will only disregard the legal distinction between parent and

---

[4]     Although CMF mostly pleads against both "Defendants" collectively throughout the complaint, there are times where CMF uses the singular "Defendant" without clarifying whether it is referring to Scout Media or North American.  *See, e.g.,* (Compl. ¶ 6) ("Plaintiff and Defendants entered into an Agreement . . . whereby **Defendant** agreed to pay . . .") (emphasis added); (*id.* ¶ 9) ("Solely as a result of **Defendant's** failure and refusal to pay . . .") (emphasis added).

subsidiary and pierce the corporate veil where "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably, fraud, on the shareholder's behalf." *Id*. at 62. Moreover, the parent must have sufficient control over the subsidiary to warrant piercing the corporate veil. "Control of the subsidiary, if extensive enough, gives rise to indirect liability under the piercing doctrine." *Id*. at 68.

The Third Circuit has set forth circumstances under which a parent corporation's control is "extensive enough" that it may be held responsible for its subsidiary's actions. Having corporate officers in common is not enough to give rise to parent liability, nor will a subsidiary's use of the parent's trade name or its administrative support personnel suffice. *Pearson v. Component Tech. Corp.,* 247 F.3d 471, 484-85 (3d Cir. 2001). Rather, the Court of Appeals has held that a court may pierce the corporate veil to hold a parent corporation accountable by looking at the following factors:

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.

*Id.* The test is meant to be an inquiry into whether the subsidiary's corporate form is "little more than a legal fiction." *Id.* at 485. "In the Third Circuit, mere ownership of a subsidiary does not justify the imposition of liability on the parent. . . . A plaintiff must plead and later demonstrate certain facts about the nature and extent of the relationship between a parent and its subsidiary corporation." *Richardson v. CSS Indus., Inc.*, No. 08-cv-3900, 2009 WL 2230761, at *3 (E.D. Pa. July 27, 2009).

The complaint lacks any allegations of North American's control over Scout Media, much less any allegations concerning the *Pearson* factors. The sole "control" allegation CMF

makes is in its response brief, where it claims for the first time that "North American

Membership Group, Inc., upon information and belief, held specific control over the significant

operations with Scout regarding this contract with Plaintiff and thus should not be dismissed

given their role with regard to their subsidiary Scout, Inc. in the instant case."  (Pl.'s Opp'n to

Mot. Dismiss 3, 8.)  On a motion to dismiss, however, the Court is limited to considering facts

from the complaint, its exhibits, and matters of public record; the Court cannot consider

allegations made exclusively in a party's motion papers.  *See Schmidt v. Skolas*, 770 F.3d 241,

249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the

allegations contained in the complaint, exhibits attached to the complaint and matters of public

record.") (citing *Pension Benefit Guar. Corp.,* 998 F.2d at 1196); *Zimmerman v. PepsiCo, Inc.*,

836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the

briefs in opposition to a motion to dismiss.") (citation omitted).

Considering only the complaint and its exhibits, CMF has not pled that North American

exercised any control over Scout Media.  Piercing the corporate veil in the absence of any such

allegations is inappropriate.  *See Zarichny v. Complete Payment Recovery Servs., Inc.*, No. 14-

cv-3197, --- F.3d ----, 2015 WL 249853, at *6 (E.D. Pa. Jan. 21, 2015) ("Zarichny alleges none

of these [*Pearson*] factors.  Indeed, her generalized allegations about FIS's business

conduct . . . fall far short of the intrusive control our Court of Appeals requires to hold a parent

corporation accountable for its subsidiary's actions.  For that reason, we will grant defendants'

motion and dismiss FIS from this lawsuit."); *Richardson*, 2009 WL 2230761, at *4 ("[T]he only

allegation Plaintiff makes against CSS is that CSS is the parent company of PMG . . . . He does

not allege that CSS acted directly or indirectly through PMG to perform any of the allegedly

unlawful acts[;] . . . that CSS and PMG were so integrated that they should be considered a

single employer; [nor] that CSS controls PMG to a degree that PMG is a mere instrumentality of CSS.  Therefore, Plaintiff has failed to state a claim upon which relief can be granted."); *cf. BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 413-14 (E.D. Pa. 2013) (dismissing breach of contract claim against parent corporation because "named Defendant Republic was not a party to the Service Agreement with BP" and "BP has presented no evidence to justify holding Republic accountable for the Service Agreement between BP and [its subsidiary] Allied Waste").

North American is not a party to the Consulting Agreement and is not alleged to hold control over Scout Media sufficient to pierce its corporate veil.  North American can therefore not be held liable for Scout Media's alleged breach of the Consulting Agreement as a matter of law.

An appropriate order follows.

 _/s/ Gerald J. Pappert_____
GERALD J. PAPPERT, J.